IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS A. CARRERO,<br><br>**Plaintiff**<br><br>v.<br><br>MOLINA HEALTHCARE OF PUERTO RICO, INC.,<br><br>**Defendant** | CIVIL NO. 21-1605 (RAM) |

### MEMORANDUM AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is defendant Molina Healthcare of Puerto Rico, Inc.'s ("Molina Healthcare" or "Defendant") *Motion to Dismiss* (the "*Motion*"). (Docket No. 9). Plaintiff Carlos Antonio Carrero ("Plaintiff") filed an *Opposition* to the *Motion* (the "*Opposition*"), and Defendant filed a *Reply* (the "*Reply*"). (Docket Nos. 11; 14). For the reasons detailed below, the *Motion* is **DENIED**.

### I. FACTUAL BACKGROUND[1]

Molina Healthcare is a health insurance company. (Docket No. 1 ¶ 3.1). In 2014, Molina Healthcare contracted with the Puerto Rico Administration of Health Insurance Services ("ASES" by its Spanish acronym) and became a major provider for Vital, Puerto

---

[1] The Court's factual recitation is taken from Plaintiff's allegations in the *Complaint*, the content of which must be accepted as true at this stage of the proceedings. *See* Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

Rico's publicly funded health insurance plan. Id. ¶ 3.2.

On March 17, 2017, Defendant hired Plaintiff, a forty-year veteran of the health services industry, as its Chief Executive Officer ("CEO"). Id. ¶ 3.6.

In summer 2020, Molina Healthcare advised ASES that, by August 2021, it would stop providing services to the Vital program. Id. ¶ 3.9. Because the ASES contract was Defendant's only business activity in Puerto Rico, this meant it would be exiting the Puerto Rican market by August 2021 as well. Id. ¶¶ 3.3, 3.9.

Following this news, Plaintiff and Defendant engaged in negotiations regarding Plaintiff's severance agreement. Id. ¶ 3.10. Plaintiff alleges that, during this process, he was led to believe that Molina Healthcare would be terminating the CEO position entirely months before it was scheduled to cease its activities in Puerto Rico. Id. ¶ 3.11. Thus, Plaintiff believed he would lose his position before August 2021 and would not be replaced. Id. Plaintiff contends this belief was supported by the tasks he was asked to carry out during the negotiation process, such as negotiating the termination of lease agreements, closing out vendor/supplier accounts, and handling pending claims. Id. ¶ 3.12.

Plaintiff asserts that by late May 2020, the parties had reached an understanding that Plaintiff would work until February 2021. Id. ¶ 3.13. Plaintiff avers this termination date was crucial

to the severance negotiations because, had he stayed in the CEO position until March 1, 2021, he would have been entitled to collect on his 2021 Employee Stock Purchase Plan. Id. ¶ 3.14. Also around late May 2020, Plaintiff received a draft Waiver and Release Agreement (the "Agreement"), which included incentives for Plaintiff to resign but did not include a precise termination date. Id. ¶ 3.13. However, because Plaintiff believed the February 2021 date "was set in stone," he signed the Agreement in June 2020, believing it was the best deal he would get under the circumstances. Id. ¶¶ 3.15, 3.16.

On January 2, 2021, Defendant allegedly prepared a letter addressed to Plaintiff advising him of his March 1, 2021 termination date. Id. ¶ 3.17. The *Complaint* does not state whether that letter was ever sent to Plaintiff.

On February 14 and 15, 2021, the parties signed an amendment to the Agreement. Id. ¶ 3.18. This amendment awarded Plaintiff an additional $15,000 in compensation and specified a February 28, 2021 termination date. Id. Pursuant to the amended agreement, Plaintiff stepped down from his role as CEO on February 28, 2021. Id. ¶ 3.19.

Thereafter, on March 29, 2021, Molina Healthcare announced the appointment of Zivany García ("García") to Plaintiff's former CEO position. Id. ¶ 3.20. Plaintiff alleges Defendant purposefully misled him into thinking his CEO position would be eliminated

beginning in March 2021 to induce him to sign the Agreement, and thus forego his stock options which would have been due if he stayed an additional day, *i.e.,* until March 1, 2021. Id. ¶ 3.22. Plaintiff contends this scheme became obvious once García was appointed. Id. ¶ 3.25.

Given this alleged deceit meant to induce Plaintiff into signing the Agreement, Plaintiff requests this Court declare the Agreement null and void pursuant to Puerto Rico law. Id. ¶ 3.23.

## II.   STANDARD OF REVIEW

When ruling on a Rule 12(b)(6) motion, "[t]he sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d at 55 (citations omitted). Then, the Court takes "the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id. (citations omitted). "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility" and thus

survives a motion to dismiss. Ocasio-Hernandez, 640 F.3d at 12.

### III. APPLICABLE LAW

Under Puerto Rico contract law, deceit, or "dolo," may exist "either in the formation of a contract where a party obtains the consent of another through deceptive means, or in the performance of a contractual obligation where a party knowingly and intentionally, through deceitful means, avoids complying with its contractual obligations." Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir. 2020) (internal quotation marks and citation omitted). Dolo is considered "grave" when it determines the consent of a party and "incidental" when it merely influences the party's consent. Id. Dolo grave nullifies the contract while incidental dolo merely gives rise to a claim for damages. Id.

While dolo and fraud are similar concepts, they are not one and the same. As this District has explained, "a fact pattern involving contract fraud will always involve 'dolo,' but a fact pattern involving 'dolo' will not always involve fraud." Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp., 92 F. Supp. 2d 8, 19 (D.P.R. 2000). Because of this subtle but important distinction, courts do not apply the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") to strictly dolo claims. Id.

Further, "dolo, like fraud, is not presumed, and the party alleging dolo bears the burden of proof." Burk v. Paulen, 100 F.

Case 3:21-cv-01605-RAM   Document 15   Filed 05/06/22   Page 6 of 10

Civil No. 21-1605 (RAM)                                                                 6

Supp. 3d 126, 135 (D.P.R. 2015). Thus, a plaintiff must sufficiently plead that the defendant "acted with intentional fault or bad faith to deceive him when discussing the formation of an agreement between the parties[.]" Id. Finally, "[a] person's education, his social and economic status, his relations, and the type of business in which he is engaged are significant when trying to determine the existence of 'dolus' that would void his consent." Citibank v. Dependable Ins. Co., 121 D.P.R. 503, 512 (1988).

## IV.  ANALYSIS

In this case, Plaintiff alleges dolo grave in the formation of a contract. Specifically, he alleges: (1) he would not have signed the Agreement or its amendment and foregone his stock options had he known Defendant would hire a new CEO, (2) Defendant purposefully misled him into thinking the CEO position would be eliminated after February 28, 2021, and (3) thus, the Agreement should be deemed null and void. (Docket No. 1 ¶¶ 3.22, 3.23). Plaintiff affirmatively rejected any reading of the *Complaint* that advanced a fraud claim, thus relying solely on a dolo theory of liability. (Docket No. 11 at 10-11). Therefore, the Court need not subject the *Complaint* to heightened scrutiny pursuant to Rule 9(b). *See* Generadora De Electricidad Del Caribe, Inc., 92 F. Supp. 2d at 19.

### A. Plaintiff states a plausible theory of deception

Defendant primarily challenges the *Complaint's* sufficiency by

arguing that Plaintiff could not have been a "victim of dolo grave" because he "knew that [Defendant] had contractual obligations that would require its presence through at least August of 2021" and thus Plaintiff must have known that Defendant "needed someone to lead its operations until its formal exit from Puerto Rico." (Docket No. 14 at 4-5).[2] The Court is not persuaded by this argument.

Plaintiff's *Complaint* freely admits that he knew Defendant was scheduled to end its business in Puerto Rico by August 2021. (Docket No. 1 at ¶ 3.9). What Plaintiff alleges he was deceived by, however, is when the CEO position was being eliminated, if at all. Id. ¶ 3.11. These are wholly separate issues that Defendant attempts to conflate. Drawing all reasonable inferences in Plaintiff's favor, as the Court must do at this stage, Plaintiff has stated a plausible dolo claim based on this theory of deception. His knowledge of Molina Healthcare's end date in Puerto Rico is not the same as knowledge of the continuation of his CEO position.

---

[2] Defendant relies on portions of an agreement Plaintiff allegedly signed with ASES in support of its contention that "Plaintiff knew that the Run-Out Period for [Defendant] to leave the Puerto Rico market would carry over until, at least, August 31, 2020[.]" (Docket Nos. 9 at 3, 9-10; 14 at 4). However, Defendant did not cite a single case where a court took judicial notice of a similar document at the motion to dismiss stage. Instead, it relies on the general standard for judicial notice and one case that decided the issue in a different procedural posture. *See* id. Thus, the Court will not consider the ASES agreement at this time.

### B. Plaintiff sufficiently alleges Defendant acted with intentional fault or bad faith

Defendant also challenges the *Complaint's* sufficiency on the grounds that Plaintiff failed to allege Defendant acted with intentional fault or bad faith, as he must to sufficiently plead a dolo claim. (Docket Nos. 9 at 7; 14 at 5); *see* Burk, 100 F. Supp. 3d at 135. The Court disagrees. Plaintiff plainly alleges Defendant "purposefully misled" him "into thinking that his position would be eliminated from [] March 2021 onward, never to be refilled[.]" (Docket No. 1 ¶ 3.22). He further alleges this "was done for the improper purpose of denying plaintiff from collecting the stock options that he was due as per his compensation agreement." Id. These specific allegations of bad faith, coupled with the numerous allegations concerning the financial ramifications and possible motivations behind Defendant's alleged deceit, allow the Court to draw the reasonable inference that Defendant acted in bad faith in inducing Plaintiff to sign the Agreement and subsequent amendment and resign from his position before March 1, 2021. *Cf.* Punta Lima, LLC v. Punta Lima Dev. Co., LLC, 425 F. Supp. 3d 87, 106 (D.P.R. 2019) (dismissing a dolo claim where the complaint contained only conclusory allegations of bad faith that did not allow the court to make a similar inference). Thus, the *Motion* cannot be granted on this ground.

### C. Plaintiff's sophistication is insufficient to justify dismissal of the *Complaint*

Finally, Defendant points to Plaintiff's level of sophistication in arguing the *Complaint* should be dismissed. (Docket Nos. 9 at 11; 14 at 4-5). Defendant contends that, "[a]s a seasoned executive, Plaintiff should be held to a very high standard, and any 'misrepresentations' through which he could have been 'duped' should have been almost offensive[.]" (Docket No. 9 at 11). The Court agrees with Defendant's general argument and notes that the First Circuit has emphasized the importance of similar considerations in the past. *See, e.g.*, Citibank Glob. Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 29 (1st Cir. 2009) (noting that "the party seeking to invalidate the contract was a wealthy and accomplished attorney experienced enough to have a portfolio that generated in excess of a million dollars in brokerage commissions"). However, in the case at bar, Plaintiff specifically states why it was reasonable to have relied on Defendant's alleged deceit despite his years of experience in the industry. (Docket No. 1 ¶ 3.12). To wit, the *Complaint* explains that Plaintiff was charged with performing tasks consistent with terminating his position, including negotiating the termination of lease agreements and closing out vendor/supplier accounts. Id. Thus, Plaintiff's sophistication does not warrant dismissing the *Complaint* at this stage.

## V.   CONCLUSION

For the foregoing reasons, Defendant's *Motion* at Docket No. 9 is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of May 2022.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
